## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| ROBERT E. SWIGERT and MARY | : | |
| ELLEN SWIGERT, | : | Case No. |
| | : | 1:18-bk-04351-HWV |
| Debtors | : | |
| | : | |
| BRUCE A. RUTH and DAWN | : | |
| CONVERSIONS, INC. | : | Chapter |
| | : | 13 |
| Movants | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT E. SWIGERT and MARY | : | |
| ELLEN SWIGERT, | : | |
| | : | |
| Respondents | : | |

## OPINION

This matter comes before the Court on the Motion of Bruce A. Ruth and Dawn Conversions, Inc. to Dismiss Chapter 13 Case for Bad Faith Filing filed on October 31, 2018 (the "Motion to Dismiss"). The debtors, Robert E. Swigert and Mary Ellen Swigert, filed the above-captioned chapter 13 proceeding on October 13, 2018. At the time the current case was filed, Mr. and Mrs. Swigert were already before the Court in another chapter 13 proceeding filed on April 4, 2017 to case number 17-bk-01380-RNO.

### I.     Jurisdiction

This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 151, 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## II.  Factual Background and Procedural History

The facts of this case are not complicated and come directly from the Movants' Motion to Dismiss and the exhibits thereto unless otherwise noted.  On July 20, 2012, Dawn Conversions, Inc. ("DCI") as seller entered an agreement with Baye Auto Sales, LLC ("Baye Auto") as buyer for the sale and purchase of an automobile sales and service business (the "Sales Agreement"). Bruce A. Ruth ("Ruth") is a principal owner of DCI.  The Debtors collectively own, or Robert E. Swigert individually owns, Baye Auto.[1]  The obligations of Baye Auto under the Sales Agreement were personally guaranteed by the Debtors and were secured by liens on the Debtors' 1930 Ford Model A 2 Door Sedan, a 1933 Ford 2 Door Sedan, and a 1953 Ford Anglia Coupe[2] (collectively, the "Pledged Vehicles").  Over the course of the next four years, Baye Auto failed to timely make all payments due to DCI under the Sales Agreement and arrears accrued in the amount of $40,264.00.  To pay these arrears, the Debtors signed a new promissory note in favor of Ruth in the principle amount of $40,264.00 plus interest over a period of 42 months (the "Note"). The Debtors' payment obligations under the Note were secured by the Pledged Vehicles, which served as collateral for same.

On April 4, 2017 the Debtors filed a voluntary chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy Court") with case number 1:17-bk-01380-RNO.[3]  The Debtors listed two of the Pledged Vehicles (the 1930 Ford Model A 2 Door Sedan and the 1933 Ford 2 Door Sedan, hereinafter collectively referred to as the "Debtors' Pledged Vehicles") on their Official Form 106A/B (Schedule A/B: Property) as

---

[1] The Debtors indicate in their response to question 27 of Official Form 107 (Statement of Financial Affairs) that one or both are members of Baye Auto.  Mr. Swigert has also disclosed in his response to question 1 of Official Form 106I (Schedule I: Your Income) that he is self-employed by Baye Auto.  As no other party has appeared before this court claiming an interest in Baye Auto, the court infers that there are no other members or managers of that limited liability company.   Schedules and Statements, *In re Swigert*, 1:17-bk-01380-RNO ECF No. 20, at 29, 39

[2] The 1953 Ford Anglia Coupe is not owned by the Debtors, but rather is owned by the Debtors' son Casey Swigert.

[3] This case was assigned to Chief Judge Robert N. Opel, II.

2

jointly owned assets with estimated values of $15,000.00 and $5,000.00, respectively. Schedules and Statements, *In re Swigert*, 1:17-bk-01380-RNO ECF No. 20. The Debtors' Pledged Vehicles were also listed on their Official Form 106C (Schedule C: The Property You Claim as Exempt) as fully exempt. *Id*. The Debtors did not list a claim secured by the Debtors' Pledged Vehicles in favor of Ruth, DCI, or any other individual or entity on their Official Form 106D (Schedule D: Creditors Who Have Claims Secured by Property). *Id*. Nor did they list Ruth or DCI as an unsecured creditor on their Official Form 106E/F (Schedule E/F: Creditors Who Have Unsecured Claims). *Id*.

On January 12, 2018, DCI and Ruth (collectively, the "Movants") filed a Motion for Relief from Automatic Stay (the "DCI/Ruth Motion for Relief") seeking an order modifying the stay imposed by section 362(a) to permit them "to exercise their rights and remedies in accordance with the terms of the Note and under state law with respect the [Pledged] Vehicles including, specifically, the right to repossess [them], the right to commence or continue with legal proceedings relating to [them], the right to effect the disposition of [them] in a commercially reasonably manner, and the right to apply the proceeds of said disposition of the [Pledged] Vehicles to the Debtors' outstanding indebtedness." Mot. for Relief, *In re Swigert*, 1:17-bk-01380-RNO ECF No. 83. The Debtors defended the DCI/Ruth Motion for Relief by filing an answer on January 26, 2018 (the "Debtors' Response") wherein they specifically denied owing any money to the Movants.

A hearing on the DCI/Ruth Motion for Relief and the Debtors' Response was originally scheduled to occur on February 22, 2018 but was continued three times at the joint request of the parties to engage in discussions, discovery, and preparation for an evidentiary hearing. *In re Swigert*, 1:17-bk-01380-RNO ECF Nos. 90, 92, 96, 98. An evidentiary hearing on the Ruth/DCI

3

Motion for Relief and the Debtor's Response thereto finally took place on June 21, 2018, during which both parties presented testimony and evidence on the matter. Following that hearing, the Bankruptcy Court made the following findings of fact and conclusions of law: 1) Debtors had not provided adequate protection; 2) there was no equity in the Pledged Vehicles; 3) the Pledged Vehicles were not necessary for an effective reorganization; and 4) Ruth had shown a plausible claim secured by the Pledged Vehicles in the amount of $30,000. Ans. to Mot. to Dismiss ¶ 14. An order granting the DCI/Ruth Motion for Relief was entered the following day on June 22, 2018 (the "Order for Relief").

Following entry of the Order for Relief, Ruth pursued his state court remedies regarding the Pledged Vehicles in the Cumberland County Court of Common Pleas (the "State Court"). As a result of those efforts, the State Court issued a writ of seizure to the Cumberland County Sheriff (the "Sheriff") on October 4, 2018, directing him to seize the Pledged Vehicles. Upon receiving the writ of seizure, the Sheriff contacted the Debtors and directed them to make the Pledged Vehicles available.[4] According to Movant, the Debtors refused to cooperate with the Sheriff and kept the Debtors' Pledged Vehicles in locked garages throughout the process.

On October 13, 2018, just 9 days after the State Court issued the writ of seizure, the Debtors filed the instant chapter 13 petition even though their prior case remained pending at that time. Upon filing the current case, the Debtors promptly notified the Sheriff of the new filing and advised him that the Pledged Vehicles were now subject to the protections of a new automatic stay.[5] Two days later, on October 15, 2018, the Debtors filed a motion to voluntarily dismiss their prior case. An order dismissing the prior case was entered on October 16, 2018.

---

[4] The Sheriff also contacted Debtors' son Casey Swigert whose vehicle was stored along with Debtors'.
[5] The letter also directed the Sheriff to refrain from taking action against property of Casey Swigert.

4

### III. Discussion

The issue presented by the Motion to Dismiss is whether the Debtors' present chapter 13 case must or should be dismissed because it was filed at a time when the Debtors' prior chapter 13 case was still open or alternatively, because it was filed in bad faith. On the facts presented in this case, the court concludes that although there is no *per se* prohibition against the filing of concurrent chapter 13 cases, this case must nevertheless be dismissed for lack of good faith.

#### A. SUITABILITY OF CONCURRENT CASES

##### 1. The Statute

There is no provision in Title 11, U.S.C.[6] that expressly prohibits contemporaneous bankruptcy filings by the same debtor. In fact, Federal Rule of Bankruptcy Procedure 1015 suggests that in some situations it is anticipated that a debtor may have two cases open at the same time.[7] Bankruptcy Code section 109(g) also addresses the filing of multiple cases, though not in the context of contemporaneous filings.[8] In addition, Bankruptcy Code sections 727(a)(8),[9] 727(a)(9),[10] and in most cases 1328(f)[11] each restrict a debtor's ability to obtain a discharge in a

---

[6] Unless otherwise noted, all future statutory references are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code" or "Code").

[7] Bankruptcy Rule 1015(a) provides, in relevant part: "[i]f two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases." Fed.R.Bankr.P 1015(a).

[8] Generally, section 109(g) renders an individual ineligible to be a debtor under the Bankruptcy Code if they have been a debtor in a case pending under the Code at any time in the preceding 180 days, and such case was dismissed: (1) for willful failure to abide by orders of the court; (2) to appear before the court in proper prosecution of the case, or; (3) because the debtor requested and obtained the voluntary dismissal of the case following the filing of request for relief from the automatic stay. 11 U.S.C. § 109(g)(2).

[9] Section 727(a)(8) prohibits a court from granting a discharge to an individual who was granted a discharge under section 727 or section 1141 in a case commenced within 8 years before the date of the petition. 11 U.S.C. § 727(a)(8).

[10] Section 727(a)(9) can prohibit a court from granting a discharge to an individual who was granted a discharge under section 1228 or section 1328 in a case commenced within 6 years before the date of the filing of the petition. 11 U.S.C. § 727(a)(9).

[11] Section 1328(f)(1) prohibits a court from granting a discharge to a Debtor if the debtor has received a discharge in a case filed under chapter 7, 11, or 12 during the 4-year period preceding the date of the petition. 11 U.S.C. § 1328(f)(1). Similarly, section 1328(f)(2) has been interpreted to prohibit a court from granting a discharge to a Debtor if the debtor has received a discharge in a case filed under chapter 13 during the 2-year period preceding the date of the petition. *In re Bateman,* 515 F.3d 272, 274-75 (4th Cir. 2008).

subsequent bankruptcy case where the debtor has already received a discharge in an earlier case. However, these sections only prohibit the granting of multiple discharges, they do not prohibit the filing of multiple cases. The court is unable to locate any other sections of the Bankruptcy Code that may be relevant to this inquiry. In the absence of direct statutory authority regarding the suitability of concurrent bankruptcy proceedings, it is appropriate to examine the opinions of various courts that have considered this issue.

### 2. The Case Law

The United States Supreme Court case of *Freshman v. Atkins*, 269 U.S. 121 (1925) appears to be the leading case regarding the issue presented here. Though *Freshman* was decided under the Bankruptcy Act of 1898, it has significantly influenced nearly every decision regarding this issue since 1925 and remains guiding precedent today. Examination of the case is therefore appropriate.

In *Freshman,* the debtor filed a voluntary petition under the Bankruptcy Act of 1898 on November 1, 1915.[12] The debtor subsequently applied for a discharge, which was opposed by a creditor. After considering the application and its opposition, the referee filed a report recommending denial of the requested discharge. For reasons unknown, the report was not acted upon by the district court. Seven years later, on November 11, 1922, the debtor filed a second voluntary petition while his first case was still pending. The creditors listed in the first petition were, together with others, included in the second. The debtor subsequently applied for a discharge in his second case, which was not opposed. Unlike the first case, the referee in the second case filed a report recommending entry of the requested discharge. Also distinct from the first case, the district court in the second case acted upon the referee's report. First, it took judicial notice of the

---

[12] Unless otherwise noted, all facts come from *Freshman v. Atkins*, 269 U.S. 121, 121-122 (1925).

pendency of the former application for discharge and denied the second application for discharge with respect to the creditors included in the first case.  Next, it granted the second application for discharge as to the additional creditors not listed in the first case and denied the discharge sought under the original proceeding.  Unsatisfied with this result, the debtor appealed to the United States Court of Appeals for the Second Circuit where the decision of the district court was affirmed.  Still unsatisfied, the debtor appealed again, this time to the United States Supreme Court.

The Supreme Court in *Freshman* had little difficulty agreeing with the lower courts' shared conclusion "that the pendency of the first application precluded a consideration of the second in respect of the same debts."  *Freshman*, 269 U.S. at 122.  As partial justification for its holding, the Supreme Court cited the "general rule that the law will not tolerate two suits at the same time for the same cause."  *Id*. at 123.  To apply this general rule to the case before it, the Supreme Court first noted that "[a] proceeding in bankruptcy has the characteristics of a suit."  *Id*.  Next, the Court observed that the denial of a discharge in a former bankruptcy proceeding "is available as a bar" to the discharge of the same debts in a subsequent bankruptcy proceeding.  *Id.*  By analogy, the Supreme Court reasoned that the pendency of the application for discharge in the first case was available to suspend or defeat the application for discharge in the second case, just as if it were a prior suit pending.  *Id*.

Importantly, the Supreme Court refined its holding by stating that "[t]he refusal to discharge was not on the merits, but upon the procedural ground that the matter could not properly be considered or adjudged, except upon the prior application."  *Id*.  As explanation of this refinement, the Supreme Court observed that ignoring an adverse ruling in a prior pending case and allowing the debtor to "make a second application, including a new hearing, is an imposition upon and an abuse of the process of the Court, if not a clear effort to circumvent the statute."  *Id*.

7

The Court then acknowledged that in such a case, "the court may well act of its own motion to suppress an attempt to overreach the due and orderly administration of justice." *Id*. In conclusion, the Court observed that "[n]ot only should the court of bankruptcy protect the creditors from an attempt to retry an issue already tried and determined between the same parties, but the court, for its own protection, should arrest, in limine, so flagrant an attempt to circumvent its decrees." *Id*. (quoting *In re Fiegenbaum*, 121 F. 69, 70 (2d Cir. 1903)).

Two controlling principles can be derived from the Supreme Court's decision in *Freshman*. The first is that there is no *per se* prohibition against the existence of concurrent bankruptcy proceedings involving the same debtor.[13] The second is that courts should conduct an inquiry into the good faith of any petition that results in concurrent bankruptcy proceedings involving the same debtor. Following that inquiry, a bankruptcy court should act to halt any consequence of the subsequent and concurrent petition that circumvents a prior decree, constitutes an imposition upon and an abuse of the process of the court, or represents a clear effort to circumvent the Bankruptcy Code. The court may also act to suppress any attempt to overreach the due and orderly administration of justice.

The United States Court of Appeals for the Third Circuit has not directly considered the appropriateness of concurrent bankruptcy proceedings. Other circuit courts and bankruptcy courts have considered the issue, though their decisions demonstrate a lack of consensus regarding how to resolve it. Contrary to the holding in *Freshman*, some courts hold that there is a *per se* prohibition against the filing of concurrent bankruptcy petitions. *In re Sidebottom*, 430 F.3d 893, 898-900 (7th Cir. 2005); *In re Gateway North Est., Inc*., No. 94-132, 1994 WL 610167, at *2 (6th Cir. Nov. 3, 1994); *Prudential Ins. Co. of Am. v. Colony Square Co*., 29 B.R. 432, 437 (W.D. Pa.

---

[13] To the contrary, recall that the new debts scheduled in the second case were discharged, notwithstanding the pendency of the prior proceeding.

8

1983); *In re Lord*, 295 B.R. 16, 19 (Bankr. E.D.N.Y. 2003). Other courts conclude that concurrent petitions are allowable, but only under certain conditions. *In re Blendheim*, 803 F.3d 477, 500 (9th Cir. 2015); *In re Saylors*, 869 F.2d 1434, 1437 (11th Cir. 1989); *In re Turner*, 207 B.R. 373, 379 (B.A.P. 2d Cir. 1997); *In re Grimes*, 117 B.R. 531, 536 (B.A.P. 9th Cir. 1990); *In re Chain*, 558 B.R. 750, 755-57 (Bankr. W.D. Pa. 2016); *In re Montes*, 526 B.R. 397, 403-04 (Bankr. D.N.M. 2015); *In re Sanchez-Dobazo*, 343 B.R. 742, 747 (Bankr. S.D. Fla. 2006); *In re Studio Five Clothing Stores, Inc.*, 192 B.R. 998, 1004-06, 1008 (Bankr. C.D. Cal. 1996). Courts that fall into the latter group, however, do not agree upon the exact conditions under which concurrent petitions should be allowed. Notwithstanding this lack of consensus regarding the suitability of concurrent bankruptcy petitions, there appears to be widespread agreement of the need to conduct an inquiry into the good faith of any petition that results in concurrent bankruptcy proceedings involving the same debtor.

After consideration of the statute and applicable caselaw, this court rejects the concept of a *per se* prohibition against concurrent filings and adopts, in its place, an analysis of the debtor's good faith as it relates to the subsequent and concurrent petition. There are several reasons for adopting this approach. First, most courts that have embraced a *per se* prohibition against the filing of concurrent bankruptcy petitions base their decision upon a misinterpretation of *Freshman*. See *In re Sidebottom*, 430 F.3d at 898-900; *In re Gateway*, No. 94-132, 1994 WL 610167, at *2; *Colony Square Co.*, 29 B.R. at 437. These courts take the phrase "the law will not tolerate two suits at the same time for the same cause" out of context and conclude that *Freshman* stands for the proposition that a debtor cannot have two bankruptcy cases open at the same time. As established above, this interpretation conflicts with the result in *Freshman*.

9

Second, virtually every court considering the suitability of concurrent bankruptcy petitions has conducted an inquiry into the good faith of the subsequent and concurrent petition as part of its analysis. Some courts, including *Freshman*, have adopted such an analysis as the primary basis for their decision. *In re Saylors*, 869 F.2d 1434, 1437-38 (11th Cir. 1989); *In re Brown*, 399 B.R. 162, 169-70 (Bankr. W.D. Va. 2009); *In re Strause*, 97 B.R. 22, 29 (Bankr. S.D. Cal. 1989); *In re Tauscher*, 26 B.R. 99, 102-03 (Bankr. E.D. Wis. 1982). A significant majority of the remaining courts have conducted this analysis as a secondary basis for their decision, regardless of the primary theory upon which their decision rests. *In re Sidebottom*, 430 F.3d 893, 899-900 (7th Cir. 2005); *In re Chain*, 558 B.R. 750, 757 (Bankr. W.D. Pa. 2016); *In re Lord*, 295 B.R. 16, 19-21 (Bankr. E.D.N.Y. 2003); *In re Heywood*, 39 B.R. 910, 911 (Bankr. W.D.N.Y. 1984).

Third, this approach is consistent with the Third Circuit case of *In re Myers*, 491 F.3d 120 (3d Cir. 2007), which this court is obliged to follow. In *Myers*, the Third Circuit held that it is appropriate for a bankruptcy court to assess the debtor's purpose as it relates to a petition and to "'decide whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law.'" *In re Myers*, 491 F.3d at 126 (quoting *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000)). Such an abuse, according to the Third Circuit, equates to "bad faith" and may constitute "cause" to dismiss a case pursuant to section 1307(c). *Id*. at 125 (citing *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)).

Having established that there is no *per se* prohibition against concurrent bankruptcy petitions involving the same debtor, the court turns now to the question of whether this case must nevertheless be dismissed for lack of good faith under *Myers*.

### B.    GOOD FAITH, OR LACK THEREOF

The Third Circuit instructs bankruptcy courts to look to the totality of the circumstances to determine if bad faith exists and may consider a wide range of factors. *In re Myers,* 491 F.3d at

125. Those factors include "the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id.* The above list is not exclusive and bankruptcy courts have broad discretion to determine good faith, or a lack thereof, based on whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law. *Id.* at 126. This court considers the timing of the petition, the Debtors' motive in filing it, and how the Debtors' actions have affected the Movants to be dispositive of this matter.

### 1. Timing of the Petition

Here, the Movants argue that the "Debtors' attempt to manipulate and avoid the clear intentions of [section 109(g)] constitutes cause for case dismissal on the basis of bad faith or for abuse of process." Mot. to Dismiss ¶ 39. This court agrees to the extent that the suspicious timing of the petition demonstrates a lack of good faith because it allowed the Debtors to circumvent section 109(g)(2) of the Bankruptcy Code.[14]

Section 109(g)(2) provides as follows:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if –
> \* \* \* \*
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C § 109(g). Like the issue concerning the suitability of concurrent bankruptcy petitions, courts disagree about the proper interpretation and application of section 109(g)(2). At the center of the dispute, incredibly, is the meaning of the word "following" as it is used in subsection (2) of

---

[14] Suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in a bad faith analysis. *In re Myers*, 491 F.3d at 125.

11

section 109(g). There is no significant dispute over the proper interpretation or meaning of any of the other words or phrases in section 109(g)(2). Therefore, to establish that the timing of the petition in this case circumvented section 109(g)(2), it is necessary to understand how the provision is interpreted and applied.

### i. Meaning of Section 109(g)(2)

Courts interpreting section 109(g)(2) are faced primarily with two textually allowable interpretations of the provision, each dependent upon the meaning of the word "following." In the first interpretation the word "following" means "*subsequent to,*" which assigns a purely temporal relationship between the debtor's act of requesting (and obtaining) the voluntary dismissal of his case and the filing of a motion for relief from stay by a creditor. In the second interpretation, the word "following" means "*as a consequence of,*" which assigns something more than a temporal connection between those two acts. As described below, the interpretation and application of section 109(g)(2) is very different depending upon which of the above meanings is adopted. Courts choosing between these two textually permissible meanings generally do so through one of three approaches.

Some courts strictly construe the text of section 109(g)(2) as it is written, without drawing inferences from the provision itself or from its legislative history. See *In re Munkwitz*, 235 B.R. 766 (E.D. Pa. 1999); *In re Richardson*, 217 B.R. 479 (Bankr. M.D. La. 1998). These courts interpret section 109(g)(2) by assigning the plain, ordinary and literal meaning to each word in the provision. Because the word "following" grammatically appears as a preposition in section 109(g)(2), courts using this strict approach interpret the word "following" to mean "*subsequent*

12

*to.*"[15]  As stated above, this interpretation of section 109(g)(2) assigns a purely temporal relationship between the debtor's act of requesting (and obtaining) the voluntary dismissal of his case and the filing of a motion for relief from stay by a creditor.  Because they consider the words of the provision to be clear and not reasonably subject to other interpretations, courts adopting this approach mechanically apply section 109(g)(2) to every instance where a debtor obtains a voluntary dismissal after a creditor has filed a motion for relief from stay, even though the intent of the statute may be different, or the result may seem harsh or undesirable.  *In re Munkwitz*, 235 B.R. at 768-69; *In re Guerrero*, 540 B.R. 270, 280-81 (Bankr. S.D. Tex. 2015); *In re Richardson*, 217 B.R. at 492.

There are significant problems with this approach.  First, it erroneously assumes that the word "following" has a clear and fixed meaning.  To the contrary, and as set forth below, the word "following" is imprecise and is therefore susceptible to multiple meanings and interpretations.  Second, this approach leads to seemingly absurd results, or at least results that are extreme or excessive.[16]  By ignoring the context within which the word "following" appears, courts adopting this approach appear to be so focused on the meaning of the word that they lose sight of the overall meaning of the provision as a whole.[17]

---

[15] Proponents of this approach read subparagraph (2) as follows:  ". . . the debtor requested and obtained the voluntary dismissal of the case [*subsequent to*] the filing of a request for relief from the automatic stay provided by section 362 of this title."  11 U.S.C. § 109(g)(2) (emphasis added).

[16] *In re Richter*, No. 10-01260, 2010 WL 4272915, at *7-8 (Bankr. N.D. Iowa Oct. 22, 2010) (denying motion to dismiss where Debtors had already surrendered motorcycle to creditor in prior case before dismissing and refiling second case);  *In re Jones*, 99 B.R. 412, 412 (Bankr. E.D. Ark. 1989) (denying motion to dismiss where motion for relief in prior case was denied);  *In re Murray*, No. 486-00325, (Bankr. S.D.Ga. 1986) (denying motion to dismiss where motion for relief had not been properly served and Debtor had no knowledge of motion at time of dismissal); see also *In re Hutchins*, 303 B.R. 503, 508-09 (Bankr. N.D. Ala. 2003) (listing multiple hypothetical situations in which a mechanical application of 109(g)(2) would produce an absurd result).

[17] As best observed by Learned Hand:  "a sterile literalism . . . loses sight of the forest for the trees."  *New York Trust Co. v. Comm'r*, 68 F.2d 19, 20 (2d. Cir. 1933).

13

To avoid the seemingly absurd results stemming from the prior approach, other courts interpret section 109(g)(2) according to its intended purpose, rather than by a strict construction of its text. *In re Ulmer*, 19 F.3d 234, 237 (5th Cir. 1994); *In re Gill*, 584 B.R. 63, 70 (Bankr. W.D. Okla. 2018). The objective of these courts is to ascertain the legislative intent of the provision and, if possible, to effectuate the purpose of the lawmakers. Courts using this approach are not constrained by the text of section 109(g)(2) and draw freely upon legislative history and other extra-textual sources to determine the true intent of the provision, which they understand to be prevention of abusive tactics on the part of a debtor. See *In re Luna*, 122 B.R. 575 (B.A.P. 9th Cir. 1990); *In re Santana*, 110 B.R. 819 (Bankr. W.D. Mich. 1990). This interpretation of section 109(g)(2) is nebulous because application of the provision may depend as much upon the disposition of the creditor's motion for relief from stay as it does upon the relationship between such motion and the debtor's act of requesting and obtaining the voluntary dismissal of his case. *In re Beal*, 347 B.R. 87, 92-93 (E.D. Wis. 2006); see also *In re Dickerson*, 209 B.R. 703, n.1 (W.D. Tenn. 1997) (initially adopting a strict interpretation approach, but later identifying circumstances under which a mechanical application would be inappropriate based on the disposition of the motion for relief). Because they consider the prevention of abusive tactics on the part of the debtor to be controlling, courts adopting this approach apply the provision only where they subjectively perceive that doing so will accomplish that goal.

This purposive approach has meaningful defects. First, it erroneously assumes that there is one shared intention behind the passage of section 109(g)(2) and that committee reports or sponsors' statements are authoritative evidence of same. The concept that a shared intention exists, and that it is perfectly discoverable using the methods described above, is a fiction filled with peril. Second, the subjective nature of this approach makes the interpretation and application of section

14

109(g)(2) unpredictable. This unpredictability in the application of section 109(g)(2) ultimately defeats one of the primary objectives of statutory interpretation, which is equal application of the law.

The final group of courts interpreting section 109(g)(2) focus on what the text of the provision says, as well as all that it fairly implies. These courts believe that the words of section 109(g)(2) are given meaning by their context, and that such context includes the purpose of the provision. According to this approach, the purpose of section 109(g)(2) is to disqualify individuals from filing a bankruptcy petition for a period of 180 days after they voluntarily request and obtain dismissal of a prior case, but only if the dismissal is in some way linked to a motion for relief from the automatic stay. This interpretation of section 109(g)(2) requires something more than a temporal connection between the debtor's act of requesting (and obtaining) the voluntary dismissal of his case and the filing of a motion for relief from stay. Because of this belief, courts adopting this approach interpret the word "following" to mean "*as a consequence of*"[18] and hold that the provision applies only where there is a causal connection between dismissal of the prior case and the motion for relief from the stay referenced therein. *In re Payton*, 481 B.R. 460, 465-67 (Bankr. N.D. Ill. 2012); *In re Durham*, 461 B.R. 139, 142 (Bankr. Mass. 2011); *In re Copman*, 161 B.R. 821, 823-24 (Bankr. E.D. Mo. 1993).

This approach has obvious advantages over the first two methods and is therefore adopted by this court. It assumes the best aspects of the strict and purposive approaches, while managing to avoid each of their pitfalls. By allowing the words of the provision to be read and understood in their context, it dodges the absurd or extreme results that can occur from a cramped reading of

---

[18] Proponents of this approach read subparagraph (2) as follows: ". . . the debtor requested and obtained the voluntary dismissal of the case [*as a consequence of*] the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g)(2) (emphasis added).

Case 1:18-bk-04351-HWV    Doc 37    Filed 04/01/19    Entered 04/01/19 16:16:25    Desc
Main Document      Page 15 of 22

the provision that is based entirely upon the possible meaning of each of its constituent words. Also, by deriving the purpose of the provision exclusively from its text rather than from extra-textual sources such as legislative history, this approach avoids the rather backward assumption that courts should look to the intent of the legislature rather than the meaning of the provision itself. It also minimizes the potential for distortion or manipulation of the provision's purpose through mischiefs inherent in the legislative process.

Having determined the proper interpretation of section 109(g)(2), the court will now examine the applicability of this provision to the facts of this case.

### ii. Application of Section 109(g)(2) to the Present Case

Though this matter has all the hallmarks of a section 109(g)(2) disqualification, the peculiar sequence of events in this case renders the provision inapplicable. According to the analysis above, section 109(g)(2) disqualifies individuals from filing a bankruptcy petition for a period of 180 days after they voluntarily request and obtain dismissal of a prior case, but only if the dismissal was a consequence of a motion for relief from the automatic stay. 11 U.S.C. § 109(g)(2). The Debtors in this case appear to meet all the conditions of section 109(g)(2) except one.

First, it is undisputed that the Debtors herein were debtors in a prior chapter 13 case pending in this court during the preceding 180 days. Second, it is uncontested that the Ruth\DCI Motion for Relief was filed in the prior case and that the debtors subsequently requested and obtained the voluntary dismissal of that matter. The only elements of 109(g)(2) that are at issue, then, are whether the Debtors requested and obtained the voluntary dismissal of the prior case as a consequence of the Ruth/DCI Motion for Relief and, if so, whether they filed the current case during the 180 days that followed.

16

As to the former element, this court finds that the facts and evidence of this matter support a conclusion that the Debtors did request and obtain the voluntary dismissal of the prior case as a consequence of the Ruth/DCI Motion for Relief. This conclusion is inferred from the Debtors' clear intent to keep the Pledged Vehicles as evidenced by the Debtors' actions and court filings in both cases. Regarding the prior case, these court filings and actions include the Debtors' decisions to: (1) fully exempt the Debtors' Pledged Vehicles on their original Schedule C; (2) fail to recognize Ruth's secured claim against the Debtors' Pledged Vehicles on Schedule D; (3) vigorously defend against the Ruth/DCI Motion for Relief by responding to same and then engaging in extensive discussions, discovery and preparation for an evidentiary hearing over a period of approximately five months; (4) conduct an evidentiary hearing for the purpose of defeating the Ruth/DCI Motion for Relief; (5) refuse to voluntarily surrender the Debtors' Pledged Vehicles to Movant once the Order for Relief was entered; and (6) intentionally frustrate the Movants' lawful repossession efforts by keeping the Pledged Vehicles locked in garages while the Sheriff was seeking to serve and execute the writ of seizure.

The Debtors' intent to retain possession of the Pledged Vehicles is also supported by the court filings and statements made in this current case, which include: (1) the October 4, 2018 correspondence to the Sheriff advising him that this case had been filed and instructing him to cease all attempts to serve the writ of seizure or to seize the Pledged Vehicles; (2) the Debtors' response to paragraph 36 of the Motion to Dismiss which acknowledges that invoking a new automatic stay was a known consequence of filing the current case, and implying that the filing was at least partially motivated by that fact; and (3) the proposed chapter 13 plan which seeks to retain the vehicles by paying the Movants' the full value of their interest in the Debtors' Pledged Vehicles as determined by this court in the prior case.

17

As to the final element of section 109(g)(2), whether the Debtors filed the current petition during the 180 days after they requested and obtained dismissal of their prior case, the court concludes that this element is not met because the current petition was unquestionably filed before the Debtors moved for or obtained the voluntary dismissal of their prior case. It is this peculiar sequence of events that renders section 109(g)(2) inapplicable. This conclusion, however, does not dispose of the Motion to Dismiss. Nor does it end the court's inquiry. To the contrary, this conclusion merely establishes is that section 109(g)(2) would have applied to the Debtors in this case but for the peculiar timing of the petition. The court must now examine whether the timing of the petition in this case demonstrates a lack of good faith under *Myers*. The court has little difficulty determining that it does.

The timing of the petition in this case demonstrates a lack of good faith. Actions designed to circumvent the Bankruptcy Code constitute an abuse of the provisions, purpose, and spirit of the bankruptcy law and therefore demonstrate a lack of good faith. See *In re Myers*, 491 F.3d at 126 (quoting *In re Tamecki*, 229 F.3d at 207); see also *Freshman v. Atkins*, 269 U.S. at 124. As described below, the facts of this case establish that the timing of the petition was deliberately designed to circumvent the effect of section 109(g)(2). It naturally follows, then, that the timing of the petition also demonstrates a lack of good faith.

As established above, but for the peculiar timing of the petition in this matter, which was entirely under the control of the Debtor, section 109(g)(2) would have applied and the Debtors would not have been eligible to file this case on October 13, 2018 as they did. The timing of the petition therefore served to circumvent section 109(g)(2). This raises the concern that the petition was timed by the Debtors precisely for that purpose. Indeed, the Debtors admitted as much at the hearing held in this matter:

18

| The Court: | Why didn't the Debtor dismiss the first case before proceeding to a second? |
|---|---|
| Counsel: | I believed that was the action necessary to avoid a prohibition on filing a second bankruptcy. |
| The Court: | Under 109(g)? |
| Counsel: | Perhaps. |

Hr'g held Jan. 8, 2019 at 10:25:28 – 10:25:52 AM.

The meaning of the above exchange between the court and counsel for the Debtors' is unmistakable. The Debtors' clearly timed their petition in this case deliberately to avoid the impact of section 109(g)(2). This conclusion finds support in the Debtors' court filings, statements and admissions on the record, and other actions taken during the pendency of both cases as described above.

Based upon the foregoing, it is no leap at all for this court to conclude that the petition in this case was deliberately timed to circumvent section 109(g)(2). This constitutes an abuse of the provisions, purpose, and spirit of Bankruptcy Code under *Myers*. It also demonstrates a lack of good faith. Because the provisions of the Bankruptcy Code should not be so easily avoided, this factor weighs heavily in favor of a finding that cause to dismiss this case exists pursuant to section 1307(c). The court now turns to the issue of the Debtors' motivation for filing the petition in this case.

## 2.    The Debtors' Motive

The Debtors' motive for filing the petition in this case as they did also demonstrates a lack of good faith. Actions designed to circumvent a prior court order constitute abuse of the provisions, purpose, and spirit of bankruptcy law and therefore demonstrate a lack of good faith. See *Freshman v. Atkins*, 269 U.S. at 124; see also *In re Myers*, 491 F.3d at 126 (quoting *In re Tamecki*, 229 F.3d at 207). It is evident to this court that the purpose of the petition was to protect the Pledged Vehicles from lawful seizure by improperly imposing a new automatic stay to replace

the one modified by the Order for Relief entered in the prior case. This conclusion, like the one before it regarding the timing of the petition, finds support in the Debtors' court filings, statements and admissions on the record, and other actions taken during the pendency of both cases. It is also supported by the facts and circumstances of this case.

Recall that the automatic stay imposed by section 363(a) in the prior case was modified on June 22, 2018 to permit the Movants to exercise their rights and remedies under Pennsylvania law with respect to the Pledged Vehicles. On October 4, 2018, just nine days before the petition was filed in this case, a lawful writ of seizure directing the Sheriff to seize the Pledged Vehicles was issued. Upon receipt of the writ of seizure, the Sheriff contacted the Debtors and directed them to make the Pledged Vehicles available for confiscation. Seizure of the Pledged Vehicles was therefore imminent, and the Debtors apparently had no legal options available to stop it. These undisputed facts, when considered together with the Debtors' deliberate timing of the petition to circumvent section 109(g)(2), establish that the Debtors' motive in filing this petition was to protect the Pledged Vehicles from lawful seizure by improperly invoking a new automatic stay to replace the one modified by the Order for Relief entered in the prior case. In other words, the purpose of the petition in this case was to protect the Pledged Vehicles from lawful seizure to overcome, or circumvent, the effect of a prior order of this court.

It is evident to this court that the Debtors' motive here was to improperly impose a new automatic stay to circumvent a prior order of this court. This constitutes an abuse of the provisions, purpose, and spirit of bankruptcy law under *Myers.* It also demonstrates that the Debtors' act of filing the petition in this case was not in good faith. Because the orders of this court should not be so easily avoided, this factor weighs heavily in favor of a finding that cause to dismiss this case

20

Case 1:18-bk-04351-HWV    Doc 37    Filed 04/01/19    Entered 04/01/19 16:16:25    Desc
Main Document      Page 20 of 22

exists pursuant to section 1307(c).  The court now turns to the issue of how the Debtors' actions in this case affected creditors.

### 3.    How the Debtors Actions Affected Creditors

The Debtors' actions in this case have had a significant and detrimental effect upon the Movants.  The court therefore considers this factor relevant.  First, it cannot be contested that the Movants have been denied the opportunity to pursue the lawful repossession and liquidation of their collateral since this case was filed on October 13, 2018.  But for the filing of this case, Movants would have lawfully repossessed and liquidated the Pledged Vehicles by now.  Second, and as a direct consequence of the filing, the Movants have been compelled to hire and pay for experienced bankruptcy counsel to assist them.    This assistance includes, at a minimum, the preparation and prosecution of the Motion to Dismiss, the preparation and filing of a proof of claim, and the preparation and filing of an objection to confirmation of the Debtors' proposed chapter 13 plan.  Third, the Movants have been forced to limit their actions to those that are allowed by the Bankruptcy Code.  They have also been required to follow the orders of this court, including the order for relief automatically imposed by section 362 in this case.  This stands in stark contrast with the Debtors' actions, which have been calculated to circumvent both the Bankruptcy Code and prior orders of this court.

The court finds that the Debtors actions in this case have had a significant and detrimental effect upon the Movants.  The court further finds that the Debtors knew their actions would have this effect as it was necessary to achieve their goal of retaining the Pledged Vehicles.   This factor demonstrates that the Debtors' act of filing the petition in this case was not in good faith and weighs in favor of a finding that cause to dismiss this case exists pursuant to section 1307(c).

21

## IV.   Conclusion

The Debtors' good faith has been adequately called into question by the facts of this case as set forth in the Motion to Dismiss.  The burden has therefore shifted to the Debtors to prove their good faith.  *In re Tamecki*, 229 F.3d 207.  The court finds that the Debtors have failed to meet their burden in this respect.  Accordingly, this case must be dismissed for lack of good faith.  The petition filed by the Debtors here was deliberately timed to avoid the effect of section 109(g)(2) which otherwise would have rendered them ineligible to file for a period of 180 days.  The Debtors' motive for engaging in this abusive tactic also demonstrates a lack of good faith.  By filing this case as they did, the Debtors sought to improperly impose a new automatic stay to evade the effect of a prior order of this court.  Each of these factors constitutes an abuse of the provisions, purpose, and spirit of the bankruptcy laws and demonstrates that the Debtors' act of filing the petition in this case was not in good faith.  The impact upon the Movant in this case has been both significant and detrimental.

In view of the foregoing, this court concludes that the relief requested by the Movants in their Motion to Dismiss is appropriate.  They seek dismissal with prejudice, which includes a bar against refiling for a period of 180 days.  Since the remedy requested would place the Movants and the Debtors in substantially the same position they would have been in but for the filing of this case, which is found to be lacking in good faith, it is hereby

ORDERED that the Motion is Granted.

An appropriate Order will follow.

Dated:   April 1, 2019

By the Court,

Henry W. Van Eck, Bankruptcy Judge (JH)

22